PEOPLE v. KRATZ.

1. INDICTMENT AND INFORMATION—CHARGE OF OFFENSE IN LANGUAGE OF STATUTE GENERALLY SUFFICIENT.

As a general rule, it is sufficient to charge an offense in the language of the statute, although in a certain class of cases this is not sufficient.[1]

2. SAME—INDECENT EXPOSURE OF PERSON.

An information charging indecent exposure of person in the language of the statute (3 Comp. Laws 1915, § 15467), was sufficient.[2]

3. OBSCENITY—INDECENT AND OBSCENE EXPOSURE OF PERSON DEFINED.

The well settled and generally known significance of the phrase "indecent and obscene exposure of the person" is the exhibition of those private parts of the person which instinctive modesty, human decency or natural self-respect require shall be customarily kept covered in the presence of others.[3]

4. SAME—GIST OF OFFENSE OF INDECENT EXPOSURE OF PERSON.

The gist of the offense of indecent exposure of the person

[1] Indictments and Informations, 31 C. J. § 260; [2] Obscenity, 29 Cyc. p. 1320; [3] Id., 29 Cyc. p. 1316.

in violation of 3 Comp. Laws 1915, § 15467, is an intentional or designedly made open, indecent or obscene exposure of the person, necessarily in the presence of others.[4]

5. SAME—TRIAL—INSTRUCTION—"OPENLY" DEFINED.

In a prosecution for the commission of said offense, it was not error for the trial court to instruct the jury that the term "openly," as used in the information and in the law, means public in the sense that it was not concealed, not private, but that it was made publicly to the people who were there in view, and it is not meant necessarily that it was in a public place or upon public property.[5]

6. WITNESSES — PERMITTING LEADING QUESTIONS TO BE ASKED YOUNG CHILDREN WITHIN DISCRETION OF COURT.

In a prosecution for indecent exposure of person, it was within the discretion of the trial court to allow the prosecutor considerable latitude in asking leading questions of young girls, witnesses for the State, the eldest of whom was 12 years.[6]

Exceptions before judgment from Muskegon; Vanderwerp (John), J.    Submitted January 15, 1925. (Docket No. 123.)    Decided April 3, 1925.

Mortimer Kratz was convicted of indecent exposure of his person in violation of section 15467, 3 Comp. Laws 1915.    Affirmed.

*Willard J. Turner* (*John G. Turner*, of counsel), for appellant.

*Andrew B. Dougherty*, Attorney General, *R. Glen Dunn*, Prosecuting Attorney, and *Robert H. Dunn*, Assistant Prosecuting Attorney (*Harry W. Jackson*, of counsel), for the people.

STEERE, J.    Defendant was convicted in the circuit court of Muskegon county on September 17, 1923, of

[4]Obscenity, 29 Cyc. p. 1316; [5]Id., Cyc. p. 1323; [6]Witnesses, 40 Cyc. p. 2429.

violating the provisions of section 15467, 3 Comp. Laws 1915, in the particular that he did (as charged in the information), "then and there designedly make an open, indecent and obscene exposure of his person in the presence of Margaret Leversay, Lucile Leversay and Alice Jones, contrary to the form of the statute in such cases made and provided," etc.

The material provisions of the section under which defendant was prosecuted are as follows:

"If any man or woman, married or unmarried, * * * shall designedly make any open, indecent or obscene exposure of his or her person, * * * every such person shall be punished by imprisonment in the county jail." * * * ·

When arraigned defendant stood mute, waiving nothing, and when the case was brought to trial his counsel interposed an objection to any testimony on the ground that the information under which defendant was arraigned did not set out any offense known to the law of this State. The court held the information sufficient in that it followed the language of the statute.

As a general rule it is held sufficient to charge the offense in the language of the statute although in a certain class of cases it has been held not sufficient. This belongs to that class of cases of which it was said in *State* v. *Millard*, 18 Vt. 577 (46 Am. Dec. 170), a prosecution involving indecent exposure of the person:

"No particular definition is given, by the statute, of what constitutes this crime. The indelicacy of the subject forbids it, and does not require of the court to state what particular conduct will constitute the offense. The common sense of the community, as well as the sense of decency, propriety and morality, which most people entertain, is sufficient to apply the statute to each particular case, and point out what particular conduct is rendered criminal by it."

See, also, *People* v. *Girardin*, 1 Mich. 90; *People* v. *Carey*, 217 Mich. 601; *State* v. *Bauguess*, 106 Iowa, 107 (76 N. W. 508).

In the latter case the wording of the statute in stating the offense is "any open and indecent exposure of his or her person," as in the instant case. The statutory description of the offense, which the information follows, contains no words of obscure or technical meaning. The well settled and generally known significance of the phrase "indecent and obscene exposure of the person" is the exhibition of those private parts of the person which instinctive modesty, human decency or natural self-respect requires shall be customarily kept covered in the presence of others.

Kratz was an elderly man who, though married, at the time of the alleged offense apparently lived alone, on Howden street in Muskegon Heights not far from railroad tracks and a gas plant across the tracks on the same side of the street, with a vacant lot between grown over with small trees and bushes which was called by witnesses "the woods."

Margaret and Lucile Leversay and Alice Jones were school girls respectively 12, 10 and 9 years old who passed Kratz' place as they went to and from school. He had talked with them as they went by, gave or offered them money at times and a street acquaintance existed between them. Briefly stated, the story of defendant's misconduct on September 17, 1923, is that when the two Leversay girls passed Kratz' place at about 1 o'clock on their way to the afternoon session of school he went out to the sidewalk and dropping a dime on it told Margaret to pick it up, which she did not do, but the girls then crossed over the street and went on. Kratz picked up the dime and walked up the street past them and into the edge of the woods, appearing to the children as they came by and motioning them towards him and made, as they told it, an

indecent and obscene exposure of his person to them. When they went home that evening after school he came out of his place and walked by them saying something as he passed, and going into the woods he circled around to the front of them. He then asked Margaret if he did not give her a quarter the other day to go to a show, which she admitted, and he then said to her "I have got another one just like it, come into the woods with me." When she asked what he wanted her to go into the woods for he replied he would tell her when they got there. She told him to go to the other side of the woods and wait there, and she would come over soon. He then started through the woods in the direction indicated. The three children hurried to the police station and told an officer, who, after hearing their complaint, went to the place indicated and finding Kratz waiting there took him into custody.

The Jones girl, who was going home from school with the Leversay girls that evening, saw no indecent exposure. She stated that she knew Kratz but "wouldn't take the money he gave me," and briefly related what occurred in her presence as follows:

"We had been to school that day. After school that night, he (Kratz) wouldn't let us go home. He kept making motions at us— Margaret and Lucile they told him to go on the other side and wait. And then we went and told Mr. Smith about him. We was coming right on straight and he wouldn't let us go any further from school, and kept making motions and motions at us."

A witness named Thompson who was working on the sidewalk near there testified to seeing Kratz pick money up from the sidewalk which the Leversay girl had thrown down, and also of his motioning for her.

Kratz testified that he knew the girls, had given Margaret a quarter at her request a week or more before September 17th, thought he saw them go to

and come from school that day, but denied the offense charged or any other improper conduct towards these girls.    Asked "Did you ever hand her (Margaret) any money and have her refuse to take it and you have to go and get it?" he replied, "I did not.    I laid ten cents on the sidewalk one time and picked it up again.    I didn't give it to her—just to show her I had it."

Error is urged against the charge of the court in not making plain that the exposure must be public, and it is contended that "under the charge as given a person might be convicted if the exposure was in a private place."    "Public" and "private" as applied to places are not absolute in meaning but relative as used in contradistinction of each other.    The statute makes no reference to place, either public or private. The gist of the offense is an intentional or designedly made "open, indecent or obscene exposure of the person," necessarily in the presence of others.    The court amply, and fairly for defendant, instructed the jury on that requisite as follows:

"The term 'openly' as used in this information and in the law under which the prosecution is had, means public in the sense that it was not concealed, that it was not private, that it was made in such a place and such a manner as to be a public exposure, that it was not within a concealed place or enclosure, but that it was made publicly to the people who were there in view, and by that, gentlemen, is not meant necessarily that it was a public ground or in a public place in the sense of its being upon public property.    It may have been upon private property, but it must have been openly and publicly with relation to the people that were there situate."

The court's charge fully instructed the jury in plain and impartial terms as to the nature of the offense charged, presumption of innocence, burden of proof beyond any reasonable doubt, cautioned against

prejudice and, in all respects, covered the various rights of an accused in a criminal case.

Complaint is made of leading questions asked the children by the prosecutor. The eldest of the two girls who testified to the offense was a child of 12 years. When called as witnesses the situation and subject-matter upon which they were interrogated naturally tended to embarrass and, at times, confuse them. Counsel on the respective sides were impartially favored during their examination by the polite replies "Yes, ma'am" and "No, ma'am." All attending circumstances presented a situation in the examination of these children bringing it within that class of cases in which it has been frequently held the trial court may without error permit a considerable degree of latitude to the prosecutor when examining immature and diffident children necessarily called as witnesses. It is noticeable that when the direct-examination of the two witnesses to the exposure reached the point in their narratives and they were asked to tell what then happened or what defendant did, each in a few simple and graphic words without leading questions or suggestion told of a vulgar demonstration to them by him constituting a designedly open, grossly indecent and obscene exposure of his person. His absolute denial raised a plain issue of fact which was left to the jury under proper instructions.

We find no reason to disturb the result. The conviction will stand affirmed.

McDonald, C. J., and Clark, Bird, Sharpe, Moore, Fellows, and Wiest, JJ., concurred.