PEOPLE v NEAL

Docket No. 252669. Submitted May 17, 2005, at Marquette. Decided
June 9, 2005, at 9:00 a.m.

A jury in the Chippewa Circuit Court returned a verdict finding
Ronald A. Neal, Jr., guilty of indecent exposure, MCL 750.335a, for
exposing himself to a minor female visitor in his home. However,
the trial court, Nicholas Lambros, J., granted the defendant's
motion for a directed verdict of acquittal because the exposure did
not occur in a public place. The prosecution appealed.

The Court of Appeals *held*:

MCL 750.335a prohibits a knowingly made open or indecent
exposure of one's person or the person of another. The test for
open exposure is whether anyone might reasonably have been
expected to observe the exposure and, if so, whether the person
might reasonably have been offended by what was seen. An
indecent exposure is an intentional exposure of part of one's body
(as the genitals) in a place where such exposure is likely to be an
offense against generally accepted standards of decency in the
community.

In this case, the defendant's exposure was open because it was
made under circumstances in which it was reasonable to expect
the victim to observe the exposure and be offended by what was
seen. The defendant's exposure was also indecent because the
defendant made a knowing and intentional exposure of his genitals
in a place where such exposure was likely to be an offense against
generally accepted standards of decency in the community. MCL
750.335a does not require that an exposure be made in public in
order to convict an offender, and the defendant was properly
convicted for the open and indecent exposure he made in his home.

Reversed and remanded for further proceedings.

CRIMINAL LAW — INDECENT EXPOSURE — PUBLIC PLACE.

The indecent exposure statute, which proscribes knowingly making
any open or indecent exposure of one's person or the person of
another, does not require that the open or indecent exposure take
place in public; the statute focuses on the conduct of the actor, the

intent in making the exposure, and the reasonable reaction to the exposure by a viewer; an open exposure is one that anyone might reasonably be expected to observe and be offended by what is seen; an indecent exposure is an intentional exposure in a place where the exposure is likely to be an offense against generally accepted standards of decency in the community (MCL 750.335a).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Brian Peppler*, Prosecuting Attorney, and *Eric G. Blubaugh*, Assistant Prosecuting Attorney, for the people.

*Tschirhart Law Office* (by *George J. Tschirhart*) for the defendant.

Before: MURRAY, P.J., and O'CONNELL and DONOFRIO, JJ.

PER CURIAM. The prosecution appeals as of right the trial court's grant of defendant's motion for a directed verdict of acquittal following a jury verdict, MCR 6.419(B), thereby acquitting defendant of indecent exposure, MCL 750.335a. Under the plain language of the statute, defendant's conduct clearly constitutes both an open exposure and an indecent exposure. Accordingly, we reverse the lower court ruling and remand for entry of judgment on the guilty verdict on the charge of indecent exposure.

According to the victim, a minor female who was spending the night in defendant's house, defendant called her into his bedroom after she had finished watching a movie. While the victim was exiting the room, defendant exposed his erect penis through the zipper of his shorts to the victim. Defendant was convicted by a jury of indecent exposure; however, the trial court granted defendant's motion for directed verdict on the basis that, for indecent exposure to be a

crime pursuant to MCL 750.335a, the exposure must take place in a public place. The sole issue on appeal is whether defendant could be properly convicted of indecent exposure for the exposure made in his house.

MCL 750.335a, known as the "indecent exposure" statute, prohibits "open" or "indecent" exposures that are knowingly made. The statute provides in relevant part that "[a]ny person who shall *knowingly make any open or indecent exposure of his or her person* or of the person of another is guilty of a misdemeanor . . . ." (Emphasis added.) "The primary goal of statutory interpretation is to give effect to the intent of the Legislature." *In re MCI*, 460 Mich 396, 411; 596 NW2d 164 (1999). The intent of the Legislature is discerned from the plain language of the statute. *Id*. While the Legislature's use of the terms "and" and "or" in statutory language has at times been inconsistent, "the words are not interchangeable and their strict meaning 'should be followed when their accurate reading does not render the sense dubious' and there is no clear legislative intent to have the words or clauses read in the conjunctive." *Auto-Owners Ins Co v Stenberg Bros, Inc*, 227 Mich App 45, 50-51; 575 NW2d 79 (1997) (citations omitted, punctuation deleted). "The word 'or' generally refers to a choice or alternative between two or more things." *Id*. at 50. Here, the use of the word "or" reveals that the plain language of the statute provides that one may be guilty of open exposure or indecent exposure, as it prohibits two different types of conduct. See *People v Williams*, 256 Mich App 576; 664 NW2d 811 (2003) (separately discussing both "open exposure" and "indecent exposure.").

The trial court's conclusion that an indecent exposure can *only* take place in public is incorrect. This requirement is neither found in the statute nor, when

properly read, the case law. Supreme Court precedent has, in fact, concluded that there is no such requirement. For example, in *People v Kratz*, 230 Mich 334, 339; 203 NW 114 (1925), the defendant alleged error in the charge against him for indecent exposure,[1] arguing that it was not made plain to the jury that the exposure must have been made in public. The defendant further contended that under the charge given, a person could be convicted of the charge if the exposure was done in a private place. *Id.* Rejecting the defendant's arguments and concluding that the trial court fairly instructed the jury,[2] the Court indicated, " 'Public' and 'private' as applied to places are not absolute in meaning but relative as used in contradistinction of each other. The statute makes no reference to place, either public or private. The gist of the offense is an intentional or designedly made 'open, indecent or obscene exposure of the person,' necessarily in the presence of others." *Id.* at 339. The *Kratz* Court made it clear that an "indecent exposure" need not take place in public and specifically

---

[1] In *Kratz*, the statute provided, "If any man or woman, married or unmarried, . . . shall designedly make any open, indecent or obscene exposure of his or her person, . . . every such person shall be punished by imprisonment in the county jail." *Id.* at 336; see also 1915 CL 15467.

[2] The trial court had instructed the jury as follows with regard to the offense of indecent exposure:

"The term 'openly' as used in this information and in the law under which the prosecution is had, *means public in the sense that it was not concealed*, that it was not private, that it was made in such a place and such a manner as to be a public exposure, that it was not within a concealed place or enclosure, but that it was made publicly to the people who were there in view, and by that, gentlemen, is not meant necessarily that it was a public ground or in a public place in the sense of its being upon public property. *It may have been upon private property, but it must have been openly and publicly within relation to the people that were there situate.*" [*Kratz, supra* at 339 (emphasis added).]

reaffirmed the plain language of the statute, which makes no reference to place.

In a plurality opinion, the Michigan Supreme Court later addressed the issue whether there could be indecent exposure in a private nudist camp. *People v Hildabridle*, 353 Mich 562; 92 NW2d 6 (1958) (opinion by VOELKER, J.). The *Hildabridle* defendants were prosecuted and convicted under a former version of MCL 750.335a, which was substantially similar to the present version of the statute. *Id.* at 566. Although the Court ultimately determined that the defendants' convictions should be reversed because of an illegal search and seizure, the plurality also discussed whether the private practice of social nudism constituted a violation of the indecent exposure statute, and determined that it did not. *Id.* at 580-582. The Court focused less on the location of the exposure and more upon the intent of the exposer and the circumstances of the exposure, indicating that the statute envisages a combination of two things: "a reasonably inferable indecent intention by the exposer as well as a reasonably-to-be expected reaction of shock and shame on the part of the probable exposee." *Id.* at 589. The Court noted, "the plain fact is that usually there is involved an aggressive and unmistakably erotic attempt to focus the attention of others solely on the sexual organs of the exposer, and, as any weary patrolman knows (if some judges may have forgotten), most usually on a certain engorged portion of the male anatomy." *Id.* at 592. Again, our Supreme Court focused not on the location of the indecent exposure, but on the act of intentionally exposing oneself to others who would be expected to be shocked by the display.

More recently, Justice BOYLE expounded on this issue in her concurring opinion in *In re Certified Question*

*(Jewell Theatre Corp v Oakland Co Prosecutor)*, 420 Mich 51; 359 NW2d 513 (1984). There, Justice BOYLE indicated that the statutory proscription against "open" exposure was meant to prohibit the display of any part of the human anatomy under circumstances that create a substantial risk that someone might be offended. *Id.* at 63. Justice BOYLE concluded, "[W]e would like to make clear that under the above test, exposure that was not 'open,' because it did not take place under circumstances that created a substantial risk that someone might be offended, could still be proscribed under the statute as 'indecent' if it violated the minimum standards of *Miller v California*, [413 US 15; 93 S Ct 2607; 37 L Ed 2d 419 (1973)] . . . ."[3] *Id.* at 64. Justice BOYLE thus made it clear that an exposure could be either open or indecent, and that an "indecent exposure" need not take place in a public area.

Defendant relies on *Williams* and *People v Vronko*, 228 Mich App 649; 579 NW2d 138 (1998), for the conclusion that an indecent exposure must take place in a public place; however, such reliance is misplaced. Neither *Williams* nor *Vronko*, upon which the *Williams* opinion was based, preclude defendant's conviction in this case.

In *Vronko*, the precise issue was whether a person's exposure must actually be witnessed by another person in order to constitute the crime of indecent exposure. *Vronko, supra* at 651. In that case, the defendant was sitting in the driver's side of a vehicle parked in front of a house near two elementary schools where children

---

[3] Justice BOYLE previously indicated in the opinion that the statute should be construed in conformity with the minimum standards set forth in *Miller* to proscribe only the "patently offensive exhibition of ultimate sex acts, normal or perverted, actual or simulated," or "patently offensive exhibitions of masturbation or excretory functions, and lewd exhibition of the genitals." *In re Certified Question, supra* at 63.

were passing by on their way to school. Although the vehicle's doors were shut, the passenger-side window was down. The main witness, who was living in the house in front of which the vehicle was parked, saw that the defendant's legs were bare, and that "it looked like [the] defendant had something in his hand, although she could not see what it was." *Id.* The witness testified, however, that the defendant's " 'right hand was in his crotch and it was just going like gangbusters.' " *Id.* Although the witness believed the defendant was exposing himself to the passing school children, she never actually saw the defendant's penis and never saw the children react to the defendant in any way. *Id.*

In addressing whether a witness to the exposure is required in order to prosecute for indecent exposure, the *Vronko* Court noted that while the standard criminal jury instruction purported to include as an element of the crime that the exposure be witnessed by another person, "the language of the statute does not explicitly require the existence of such a witness . . . ." *Id.* at 655. The Court stated that if the statute did, in fact, include such an element, it must be contained within the phrase "open or indecent exposure." *Id.* Indicating that courts will construe a statutory crime by resorting to the common-law definition where the statutory provision employs the general terms of the common law to describe an offense, the Court stated that it was not required at common law that an "indecent exposure" be observed in order to constitute a punishable misdemeanor. The Court held that "there is no requirement that the defendant's exposure actually be witnessed by another person in order to constitute 'open or indecent exposure,' as long as the exposure occurred *in a public place under circumstances in which another person might reasonably have been expected to observe it.*" *Id.* at 657 (emphasis added). The *Vronko* Court thus did not

hold that every circumstance of indecent exposure need occur in a public place. Rather, it merely determined that the phrase, "open or indecent exposure" itself did not encompass a requirement that the exposure actually be witnessed by another person *if* the exposure occurred in a public place under circumstances in which another person might reasonably have been expected to observe it.

*Williams* likewise does not contain a requirement that the exposure occur in public. Indeed, *Williams* actually supports defendant's conviction in this case. In *Williams*, the defendant entered the bathroom of a private residence while his eight-year-old niece was taking a bath. *Williams, supra* at 577. Although the niece asked the defendant to leave, he refused and then drew a picture of her, including a depiction of her vagina and breasts. *Id.* Thus, in *Williams*, the defendant did not expose himself to anyone, but caused his niece to be exposed to him when he went into the bathroom and the child did not leave the bathroom.

The *Williams* Court bifurcated its discussion of the indecent exposure statute into, first, whether there was an "open exposure" and, second, whether there was an "indecent exposure." In finding that the defendant did not make an "open exposure," the Court relied in part on Justice BOYLE's test for "open exposure" of " 'whether anyone might reasonably have been expected to observe it and, if so, whether the person might reasonably have been expected to have been offended by what was seen.' " *Williams, supra* at 583 (citation deleted). Regarding open exposures, the Court found that the Legislature's aim was to punish exposures that would be offensive to viewers, actual or potential, and not to the person who caused the exposure. *Id.* Thus, the defendant in *Williams* could not be convicted of

open exposure because there was no "viewer" who would have been offended by what was seen.

Although raised for the first time on appeal, the *Williams* Court also discussed whether the defendant could be convicted of "indecent" exposure. The *Williams* Court reaffirmed the *Vronko* Court's definition of "indecent exposure" as " 'an "intentional exposure of part of one's body (as the genitals) in a place where such exposure is likely to be an offense against generally accepted standards of decency in a community." ' " *Williams, supra* at 585 (citations deleted). As in *Vronko,* the *Williams* Court indicated that an exposure need not " 'actually be witnessed by another person in order to constitute "open or indecent exposure," *as long as* the exposure occurred in a public place under circumstances in which another person might reasonably have been expected to observe it.' " *Id.* at 585 (emphasis added, citations deleted). Hence, because the *Williams* defendant was the person creating the exposure, and there was no actual witness to the exposure other than himself, the exposure was required to be in public. *Id.* In other words, because the defendant/viewer/exposer would not have found the exposure offensive, he could not be prosecuted under the statute because he did not expose the person of another in a public place under circumstances in which another person might reasonably have been expected to observe it. *Vronko, supra*; *Williams, supra.* Thus, *Williams* does not require that every "indecent" exposure be made in a public place, but that, when the exposure is not witnessed by another, it must be made in a public place.

Recently, this Court addressed the issue whether an exposure made on a television program fell within the scope of the indecent exposure statute as an "open or indecent exposure." *People v Huffman,* 266 Mich App

354; ___ NW2d ___ (2005). The Court reiterated the *Vronko* definition of "open exposure" in determining that the indecent exposure statute was properly applied to encompass an "open or indecent exposure" in the form of a televised image. *Id.* at 361. The Court refused to read into the statute a "limitation that would prevent its application to [the] defendant's televised and, therefore, powerfully effective exposure." *Id.* The Court determined that a televised exposure, while qualitatively different from a physical exposure, could be more offensive and threatening, because it is likely a more shocking event to be subjected to a televised exposure in the privacy of one's own home than an exposure by some stranger in a public forum. *Id.* at 360. The Court noted that the televised exposure was "likely more of an immediate close up than would occur if [the defendant] had been physically present with those subject to his exposure," and further that the defendant's exposure lasted much longer than it would have likely been allowed in a public square. *Id.* at 360-361.

Here, defendant's exposure clearly falls within the definition of an "open" exposure. The victim would have reasonably been expected to observe it, and she might reasonably have been expected to have been offended by what was seen. *Huffman, supra; Williams, supra; Vronko, supra.* Indeed, the evidence shows that defendant intentionally exposed his genitals to a minor and that the victim was offended by the exposure. As seen in *Huffman*, an exposure, although not made in a public place, may fall within the definition of an "open exposure" if it is comprised of "conduct consisting of a display of . . . the human anatomy under circumstances which created a substantial risk that someone might be offended." *Huffman, supra* at 360 (citations omitted). Additionally, defendant's conduct also falls under the definition of "indecent" exposure. Defendant, just as in

the example discussed in *Hildabridle*, made a knowing and intentional exposure of part of his body (his genitals) to a minor child in a place (a house) where such exposure is likely to be an offense against generally accepted standards of decency in a community. *Williams, supra.* It was not necessary that the exposure occur in a public place because there was in fact a witness to the exposure itself.[4] Thus, defendant's exposure could be properly categorized not only as an "open" exposure, but also as an "indecent" exposure for purposes of MCL 750.335a.

This is not to say that each and every exposure made inside one's home constitutes an "indecent" or "open" exposure for the purposes of the statute. Rather, the statute makes it clear that the "indecent" or "open" exposure must be knowingly made. As indicated above, Michigan case law has provided additional protection against an over-inclusive interpretation of the statute through the precise standards to be applied in this type of case. Further, the *Miller* case also sets forth specific minimum standards that must be met in order for there to be an "open" or "indecent" exposure. *Miller, supra*; see also *In re Certified Question, supra.*

Finally, it is significant to note that a statutory scheme exists that specifically prohibits "indecent or obscene conduct *in a public place.*" See MCL 750.167(1)(f); MCL 750.168. Unlike the statute we are faced with today, the "disorderly person" statute expressly prohibits "indecent" conduct in a public place, which by its very terms, encompasses acts of indecent exposure. MCL 750.167(1)(f). The "disorderly person" statutes thus proscribe precisely the type of public

---

[4] In light of our conclusion, the Standing Committee on Standard Criminal Jury Instructions may want to review CJI2d 20.33(4).

conduct defendant seeks to have read into the indecent exposure statute.

In conclusion, under the plain language of the statute and prior case law interpretation of it, defendant made an "open or indecent exposure" for the purposes of MCL 750.335a. Focusing not on the location of the exposure, but on defendant's conduct, his intent in making the exposure, and the reasonable reaction to the exposure by the viewer, defendant's conviction under the indecent exposure statute must stand.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.