*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOSHUA STERLING SWEET,

        Defendant-Appellant.

UNPUBLISHED
May 7, 2019

No. 341338
Chippewa Circuit Court
LC No. 16-003113-FC

Before: BOONSTRA, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his conviction of first-degree criminal sexual conduct (CSC-I), MCL 750.520b, for which the trial court sentenced him to 7 to 25 years of imprisonment. We affirm defendant's conviction but remand this case for resentencing.

## I. BACKGROUND

Defendant was a United States Border Patrol agent at the Sault Ste. Marie border station. He met the complainant, CC, at a local restaurant where she was a waitress. The pair conversed at the restaurant on several occasions, exchanged text messages and phone calls, and eventually decided to go on a date. The date was to occur at defendant's home, where defendant was going to cook dinner for CC. CC testified that she felt safe going to defendant's home for the date because defendant worked in law enforcement.

According to CC, when she arrived at defendant's home for the date, defendant showed her his safe full of firearms—despite knowing that she was scared of guns. CC testified that defendant then showed her his backyard shooting range and told her that his neighbors would not be surprised to hear a gunshot coming from his property. The two then entered the home's kitchen, at which time the alleged assault occurred. According to CC, defendant asked her for a hug; she obliged and defendant tried to kiss her and pulled her shirt down to expose her breast. CC said "no," but defendant allegedly grabbed her wrist, turned her around, pushed her against the sink, and pulled down her pants. CC testified that defendant then forced her into penile-vaginal intercourse, which hurt her—in part because she was wearing a tampon. After defendant

completed the assault, CC went to the bathroom to clean up. She testified that she had to lie on her back and painfully "dig . . . out" the tampon.

CC eventually left the home, but she did not immediately report the assault. According to CC and her coworkers, CC fell apart after her date with defendant and, despite overcoming substance-abuse issues to maintain a period of sobriety before the date, resumed her drug-use. At the encouragement of her coworkers, CC voluntarily admitted herself into a 30-day drug-rehabilitation program. Before leaving for the program, she disclosed the assault to her friend, Brent Aikens, who encouraged her to go to the police. CC refused, alleging that no one would believe a drug addict over a Border Patrol agent. After returning from rehab, CC volunteered to assist a drug task force, the Upper Peninsula Substances Enforcement Team (UPSET). It was during her stint with UPSET that CC officially reported the assault. CC then gave consistent statements to two police officers, who testified to that effect at trial.

For his part, defendant maintained that the sexual act was consensual. In his case-in-chief, defendant offered several "good-character" witnesses who testified that the alleged assault would have been inconsistent with defendant's character. This testimony, however, conflicted with the prosecution's case-in-chief, in which several of defendant's coworkers testified that defendant had anger or outburst issues.

The jury convicted defendant of CSC-I but acquitted him of felony-firearm, MCL 750.227b. The trial court sentenced defendant, within his sentencing-guidelines range as a first-time offender, to 7 to 25 years of imprisonment. This appeal followed.

II. ANALYSIS

A. PRIOR CONSISTENT STATEMENTS

Defendant first argues that the trial court erred by admitting the hearsay testimony of three witnesses: CC's friend Brent Aikens, Michigan State Police Sergeant Kristen Kuenzer, and Michigan State Police Detective Sergeant Michael Schroeder. Each witness testified that CC had revealed details about the alleged sexual assault to them. The prosecution contends that this testimony was not hearsay because it consisted of prior consistent statements offered to rebut a charge of recent fabrication.

MRE 801(c) defines hearsay as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is generally inadmissible as evidence in a criminal trial. MRE 802. Nonetheless, MRE 801(d) excludes two types of statements from MRE 801(c)'s general hearsay definition: certain types of prior consistent statements and party admissions. Regarding the former, MRE 801(d)(1)(B) provides that a statement is not hearsay if:

> The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive[.]

In other words, for testimony to fall within MRE 801(d)(1)(B):

(1) the declarant must testify at trial and be subject to cross-examination; (2) there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony; (3) the proponent must offer a prior consistent statement that is consistent with the declarant's challenged in-court testimony; and, (4) the prior consistent statement must be made prior to the time that the supposed motive to falsify arose. [*People v Jones*, 240 Mich App 704, 707; 613 NW2d 411 (2000) (internal citation and quotation marks omitted).]

Elements (1) and (3) are not contested for any of the witnesses. As for element (2), a charge of recent fabrication, CC revealed the assault during her time with UPSET. At several points during the trial, defense counsel implied that CC fabricated her revelation in an attempt to gain some sort of "quid pro quo" from the police related to her substance-abuse issues. During jury selection, defense counsel asked jurors whether they believed that "a drug addict would lie to help themselves or get other people in trouble[?]" Defense counsel then began his opening statement by stating that "this entire case is an absolute lie by [CC]." Later in the statement, defense counsel implored the jury to look at CC's "history and motives," contending that the intercourse was consensual and that "later she changed her mind." Then, during his cross-examination of CC, defense counsel repeatedly questioned CC's motives for joining UPSET, eliciting that CC disclosed the assault during her time with the task force.[1]

A reasonable inference, viewing defense counsel's voir-dire questions, opening statement, and cross-examination of CC as a whole, is that he was implying that CC joined UPSET and accused defendant of sexual assault in exchange for some sort of benefit related to her drug issues. As argued by the prosecution, defense counsel implied that CC gave the UPSET officers a "big fish" by accusing defendant of sexual assault. While it is true that UPSET focused on drug crimes, not sexual assault, the implication was that the UPSET officers would be pleased to "root out" a bad cop. Accordingly, we conclude that element 2 was satisfied for each witness.

With regard to element 4, the timing of the prior statement, we conclude that this element was satisfied as to Aikens, but not Sergeants Kuenzer and Schroeder. As already noted, to qualify under MRE 801(d)(1)(b), the prior consistent statement must be made before the alleged motive to falsify arose. Here, as charged by defense counsel, the point of demarcation is around the time when CC joined UPSET and revealed the allegations. Because CC made her statement to Aikens before becoming involved with UPSET, the statement is not barred from evidence by the hearsay ban.[2][3] CC, however, made her statements to Sergeants Kuenzer and Schroeder after

---

[1] Defense counsel also raised the issue with Aikens, asking Aikens if CC was being investigated for her drug-related conduct and using UPSET to "work[] off" her charges. Although this questioning occurred after some of the challenged testimony, it is helpful to explain the implications of counsel's earlier questions and statements.

[2] Relatedly, we reject defendant's argument that counsel was ineffective for failing to object to the admission of Aiken's testimony.

[3] Defendant does not argue that any other rule of evidence precluded admission.

she had revealed the assault to the UPSET officers. Accordingly, because element 4 is not satisfied with regard to those statements, the statements constituted non-excepted hearsay and the trial court erred by admitting them into evidence.

That errors occurred, however, does not mean that defendant is entitled to relief. Rather, to be entitled to relief, the errors must have resulted in a miscarriage of justice. MCL 769.26. In other words, the errors are not grounds for reversal, unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the errors were outcome determinative. *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999). The strength of the admissible evidence is particularly relevant to this inquiry. *Id*. at 496-497.

Here, CC and Aikens both provided detailed testimony about the assault and were subject to extensive cross examination. Moreover, CC's coworkers testified that CC's day-to-day demeanor changed drastically after the incident. Finally, we point out that the erroneous admissions relate to statements CC made to police officers after her initial disclosure to the UPSET officers. Given defense counsel's charge that CC fabricated the allegations to gain favor with the police, it is unlikely that, had the jury believed that CC's initial revelation was false, it would be swayed otherwise by CC's subsequent consistent statements. Accordingly, we conclude that it was not more probable than not that the errors were outcome determinative.[4]

## B. CHARACTER-CONFORMITY EVIDENCE

Defendant next argues that the trial court erred by admitting certain testimony of a fellow Border Patrol agent, Carl Ball. Specifically, defendant takes issue with (1) Ball's testimony that defendant "can be aggressive . . . to try to . . . get a job done," (2) Ball's testimony that defendant sometimes had a "short fuse," and (3) Ball's testimony that defendant did not deal well with being told "no."[5] We review this unpreserved argument for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

---

[4] In addition to arguing against the admission of Sergeant Schroeder's testimony regarding CC's statement to him, defendant makes a separate argument on appeal about Schroeder's answer of "no" when he was asked, "And you've heard the testimony of [CC], or the testimony of Sergeant Kuenzer, is there anything that she told you that was inconsistent with those accounts?" Defendant argues that Sergeant Schroeder improperly vouched for CC's credibility through this statement. We disagree. The brief answer merely reiterated Sergeant Schroeder's testimony regarding what CC had told him and, like that testimony, was harmless. Again, had the jury believed that CC made an initial false disclosure, it is unlikely that it would have been swayed otherwise by CC's subsequent consistent statements or Sergeant Schroeder's testimony regarding those statements. Contrary to defendant's argument on appeal, defense counsel was not ineffective for failing to object, specifically, to this answer of "no."

[5] We note that other prosecution witnesses testified to aspects of defendant's good character, stating that defendant was a "trustworthy" agent and a "great guy." Indeed, Ball even testified that defendant could be a good agent.

As a general rule, "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." MRE 404(a). The accused, however, has "an absolute right to introduce evidence of his character to prove that he could not have committed the crime." *People v Whitfield*, 425 Mich 116, 130; 388 NW2d 206 (1986); see also MRE 404(a)(1). "Once a defendant introduces character testimony, the prosecution can then rebut that testimony." *Id*.

Here, in his case-in-chief, defendant introduced evidence of his good character through the testimony of four witnesses. Accordingly, the prosecutor was entitled to offer rebuttal witnesses to challenge defendant's assertion of good character. *Id*. The issue in this case, however, is not whether the prosecution could offer rebuttal evidence of bad character, but whether the prosecution could preemptively offer that evidence during its case in chief. MRE 404 clearly prohibits the prosecution from doing so. Thus, the trial court erred by admitting the challenged testimony.

Nonetheless, under the plain-error rule, the error does not entitle defendant to relief unless he demonstrates that the error affected the outcome of the proceedings. *Carines*, 460 Mich at 763. In this case, the issue is one of timing; because the challenged testimony was admissible on rebuttal, defendant must show that offering the testimony *preemptively* affected the outcome of his trial. Critically, defendant does not argue that, if the prosecution had not offered evidence of his bad character, he would have refrained from offering evidence of his good character. Thus, defendant has failed to show that the error put evidence before the jury that it would not have heard otherwise.[6]

Accordingly, defendant has failed to meet his burden to show that the erroneous admission affected the outcome of the proceedings. Similarly, because defendant has not argued that defense counsel would have refrained from offering good-character evidence had the prosecution not first offered the bad-character evidence (or, relatedly, that defense counsel *should have* refrained from offering the evidence), we reject defendant's related claim that counsel was ineffective for failing to object to the preemptive character testimony. Defendant is not entitled to relief—under either our ineffective-assistance or plain-error jurisprudence—unless he demonstrates that the error affected the outcome of the proceedings.[7] See *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000) (ineffective assistance of counsel); *Carines*, 460 Mich at 763 (plain-error analysis).

---

[6] Similarly, defendant does not argue that the jury would have rendered a different verdict had it heard evidence of defendant's good character before hearing evidence of defendant's bad character. Nevertheless, even had defendant made this argument, we would have rejected it. For the purposes of plain-error analysis, we must view the trial court proceedings as a whole and there is no evidence on this record from which we may reasonably conclude that the timing of the evidentiary presentations affected the jury's deliberations.

[7] The strength of the prosecution's other evidence, especially the testimony of CC, Aikens, and CC's coworkers, strengthens our conclusion that trial counsel's allegedly erroneous failure to object to the preemptive good-character evidence was not outcome determinative.

## C. OFFENSE-VARIABLE SCORING

Lastly, defendant contends that the trial court improperly scored Offense Variables (OVs) 3, 10, 12, and 13 of the sentencing guidelines.[8] The proper interpretation and application of the sentencing guidelines is a legal question that this Court reviews de novo. *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004). "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v Lampe*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 342325); slip op at 2 (internal citation and quotation marks omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

### 1. OV 3: PHYSICAL INJURY TO A VICTIM

OV 3 scores for physical injury to the victim. MCL 777.33. The trial court scored OV 3 at five points, indicating that "[b]odily injury requiring medical treatment occurred to a victim." MCL 777.33(1)(e). Bodily injury "encompasses anything that the victim would, under the circumstances, perceive as some unwanted physically damaging consequence." *People v McDonald*, 293 Mich App 292, 298; 811 NW2d 507 (2011). Here, CC testified that defendant first "hurt" her by restraining her arm. Defendant then "hurt" her again by vaginally penetrating her; indeed, the act was made that much more painful by the fact that CC was wearing a tampon at the time, which she later had to "dig . . . out." This testimony was sufficient to score OV 3 at five points. See *People v Apgar*, 264 Mich App 321, 329; 690 NW2d 312 (2004) (finding that vaginal irritation and redness was sufficient to score OV 3 at five points), overruled on other grounds by *People v White*, 501 Mich 160, 164-165; 905 NW2d 228 (2017).[9]

### 2. OV 10: PREDATORY CONDUCT

OV 10 scores for the exploitation of a vulnerable victim. MCL 777.40. The trial court scored OV 10 at 10 points, indicating that defendant had "abused his or her authority status." MCL 777.40(1)(b). " 'Abuse of authority status' means a victim was exploited out of fear or deference to an authority figure, including, but not limited to, a parent, physician, or teacher." MCL 777.40(3)(d).

---

[8] Defense counsel properly preserved all the OV challenges raised on appeal in his written and oral arguments before the trial court. We reject defendant's assertion that counsel was ineffective for making an inadequate argument before the trial court regarding OV 10.

[9] Although the trial court did err by discussing CC's psychological injury under this variable, that error is harmless in light of the trial court's recognition that CC was physically injured by the assault.

Defendant argues that he did not have any authority status relevant to OV 10 because law-enforcement officers are not listed within the definition provided by MCL 777.40(3)(d). We disagree. Although it is correct that law-enforcement officers are not *listed* in the definition, the definition states that it is "not limited to" the delineated authority figures. It is hardly a surprise to conclude that law-enforcement officers hold positions of authority in our society. The more relevant question is whether defendant, who was off duty at the time, abused his authority as a police officer to sexually exploit CC.

CC testified that she felt safe going to defendant's home for a date because he was a law-enforcement officer. Earlier, at the restaurant where CC worked and before her date with defendant, CC had noticed that defendant carried a gun and had informed him that she did not like guns because they scared her. At the restaurant, she could tell from his uniform that he was a Border Patrol officer. Testimony indicated that upon arriving at defendant's house, defendant showed CC his guns and shooting range and informed her that his neighbor would not find it unusual to hear a gunshot coming from his yard. It is a reasonable inference that defendant used his status as a Border Patrol agent, his carrying of his gun as a condition of that employment, and his subsequent showing of guns to CC at his home, to exploit her fear of guns and commit the crime. The trial court did not clearly err by assessing 10 points for OV 10.

### 3. OVS 12 AND 13: OTHER CRIMINAL ACTIVITY

OVs 12 and 13 are unique in that they are corresponding variables, each scoring for other felonious criminal activity. OV 12 scores for contemporaneous felonious criminal acts. MCL 777.42. A felonious criminal act is contemporaneous if (1) it occurred within 24 hours of the sentencing offense and (2) it has not and will not result in a separate conviction. MCL 777.42(2). OV 12 scores for "acts other than the sentencing offense and not just other methods of classifying the sentencing offense." *People v Light*, 290 Mich App 717, 726; 803 NW2d 720 (2010).

OV 13 scores for a continuing pattern of criminal behavior. MCL 777.43. OV 13 is temporally broader than OV 12 in that it scores for "all crimes within a 5-year period, including the sentencing offense, . . . regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a). When scoring these OVs, the trial court should score OV 12 first utilizing all applicable conduct. *People v Bemer*, 286 Mich App 26, 35; 777 NW2d 464 (2009). Conduct scored for OV 12 should not be used to score OV 13. MCL 777.43(2)(c).

In this case, Investigating Agent Bruce Garchow prepared the presentence-investigation report (PSIR) and recommended a 10-point score for OV 12 and a 25-point score for OV 13. The trial court should score OV 12 at 10 points when "[t]wo contemporaneous felonious criminal acts involving crimes against a person were committed." MCL 777.42(1)(b). OV 13 should be scored at 25 points when the "offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c).

Mr. Garchow testified at the sentencing hearing that the two contemporaneous felonies he used to score OV 12 at 10 points were (1) defendant's assault with intent to commit sexual assault (assault with CSC intent) by forcibly kissing CC, see MCL 750.520g, and (2) defendant's fourth-degree criminal sexual conduct (CSC-IV) by grabbing CC's buttocks, see MCL

750.520e.[10] Mr. Garchow indicated that the three felonies he used to score OV 13 at 25 points were (1) the sentencing offense, CSC I, (2) a CSC-IV defendant committed by pulling down CC's shirt to expose her breasts, see MCL 750.520e, and (3) defendant's indecent exposure for ejaculating on CC's leg, see MCL 750.335a. The trial court adopted Mr. Garchow's rationale and approved the scores. In making its findings, the trial court also indicated that defendant's grabbing of the victim's wrist could constitute other criminal conduct, but it did not indicate whether it made this finding in relation to OV 12 or to OV 13.

There are several problems with the trial court's scoring of these variables. Preliminarily, each of these alleged instances of other criminal conduct occurred during the immediate timeframe in which defendant was committing the sentencing offense. Accordingly, because each act occurred within 24 hours of the sentencing offense and would not result in a separate conviction, the trial court should have considered the proposed acts entirely under OV 12—not through a combination of OV 12 and OV 13. See *Bemer*, 286 Mich App at 35 ("[W]hen scoring OV 13, the trial court cannot consider any conduct that was or *should have been* scored under [OV 12].").[11] Therefore, we conclude that the trial court erred by scoring OV 13 at 25 points. The trial court should have assessed no points for OV 13. MCL 777.43(1)(g).

---

[10] MCL 750.520e criminalizes fourth-degree criminal sexual conduct as a misdemeanor punishable by up to two years of imprisonment. MCL 750.520e(2). Although OVs 12 and 13 score for other *felonious* criminal acts, a 2-year misdemeanor under the penal code may qualify as a felony for sentencing purposes. See *People v Smith*, 423 Mich 427, 446-447; 378 NW2d 384 (1985) (concluding that a two-year misdemeanor may serve as the felony basis for an habitual-offender enhancement.).

[11] We note that the trial court considered five possible instances of other criminal conduct when determining the scores for OV 12 and OV 13. Assuming *arguendo* that each act qualified as a contemporaneous felonious criminal act under MCL 777.42(2) (an argument which can only be made *arguendo* given our pending conclusion that only two of the five acts qualify for scoring under OV 12), only three of these five instances would be necessary to score OV 12 at its maximum, 25 points. MCL 777.42(1)(a). Accordingly, the trial court would be left with two criminal acts that qualify under OV 12, but do not increase the defendant's score for that variable. In other words, the trial court would have two "extra" contemporaneous felonious criminal acts to consider. Nonetheless, despite the inability of these "extra" acts to increase the defendant's OV-12 score, the trial court is precluded from scoring these "extra" contemporaneous felonious criminal acts under OV 13. Although three contemporaneous felonious criminal acts are *sufficient* to score OV 12 at 25 points, a score of 25 points designates "three *or more* contemporaneous felonious criminal acts." MCL 777.42(1)(a) (emphasis added). Therefore, the "extra" acts are not "extra" at all; rather, they form the foundation for a 25-point score under OV 12. In turn, because these additional felonious criminal acts should be scored under OV 12, they cannot be scored under OV 13. *Bemer*, 286 Mich App at 35 ("[W]hen scoring OV 13, the trial court cannot consider any conduct that was or *should have been* scored under [OV 12].").

Next, having concluded that the proposed conduct was ineligible for scoring under OV 13, we must now determine which acts the trial court should have scored as contemporaneous felonious criminal acts under OV 12. The trial court's analysis offers five options: (1) defendant's alleged assault with CSC intent by forcibly kissing CC: (2) defendant's alleged CSC-IV committed by grabbing CC's buttocks: (3) defendant's alleged CSC-IV committed by pulling down CC's shirt to expose her breasts; (4) defendant's alleged indecent exposure for ejaculating on CC's leg; and (5) defendant's alleged assault with CSC intent for grabbing CC's wrist. Addressing each act in turn, we conclude that only two of these acts qualify for scoring under OV 12.

With regard to the first alleged act, a defendant commits an assault with CSC intent by intentionally touching a nonconsenting victim in a harmful or offensive manner with the intent to commit a sexual assault. See *People v Starks*, 473 Mich 227, 234-235; 701 NW2d 136 (2005); MCL 750.520(g). CC testified that defendant hugged her and tried to kiss her but she pulled away. Shortly thereafter, defendant committed the sentencing offense of CSC-I.[12] Accordingly, the trial court did not err by concluding that defendant committed an assault with intent to commit CSC. Despite the fact that defendant committed CSC-I shortly thereafter, assault with CSC intent is not simply a reclassification of the sentencing offense. In other words, defendant's forcible kissing of CC did not form the basis for his CSC-I conviction, leaving it available for scoring under OV 12. The trial court did not clearly err by scoring this conduct under OV 12.

Concerning the second alleged act, a defendant commits CSC-IV *inter-alia* by using force or coercion to intentionally touch the victim's breasts or buttocks (or the clothing covering those immediate areas) for the purpose of sexual arousal or gratification. See MCL 750.520e, MCL 750.520a(f), (q). The trial court concluded that defendant committed a CSC-IV by grabbing CC's buttocks. We first note that CC did not testify or otherwise indicate that defendant grabbed her buttocks. Rather, CC testified that defendant pulled down her pants. While it may be reasonable to conclude that defendant touched CC's buttocks or the clothing covering her buttocks during this removal, we cannot conclude that this touching was a separate criminal act. Rather, the most reasonable interpretation of the record is that defendant's removal of CC's clothing constituted part of the "force" necessary to commit the sentencing offense. In other words, had defendant not forcibly removed CC's pants, the criminal penetration would not have occurred. Thus, given the immediate temporal proximity between defendant's removal of CC's clothing and the criminal penetration—and the necessary correlation between the two—it is impossible to parse defendant's removal of CC's pants (and therefore any touching of her buttocks during this disrobing) from the sentencing offense. The trial court clearly erred by scoring OV 12 on this basis.

---

[12] We note that the forcible kissing did not necessarily make up the "force" necessary to commit CSC-I. See MCL 750.520b. Rather, as will be explained shortly, the "force" element of CSC-I was most likely met when defendant pulled off CC's pants, grabbed CC's wrist, and forced her against the sink. Indeed, other offensive conduct separates defendant's unwanted kissing from his forced penetration.

As to the third alleged act, CC testified that, around the time defendant was forcibly kissing her, defendant "started pulling my shirt down and trying to pull my breast out." Unlike any touching of CC's buttocks, defendant's touching of CC's breast (and/or the clothing covering it) was temporally removed from the criminal penetration for which defendant was convicted, separated by defendant's forcible removal of CC's pants, his aggressive repositioning of her, and the removal of his penis from his own clothing. Moreover, while the alleged touching of CC's buttocks furthered the criminal vaginal penetration, the same cannot be said of defendant's touching of CC's breast. Indeed, defendant did not touch CC's breast while he criminally penetrated her, nor did he need to do so to commit the penetration. Thus, because defendant did not touch CC's breasts as part of the unconsented penetration, the trial court should have scored this conduct as a contemporaneous felonious criminal act under OV 12.

Regarding the fourth act, we can only reasonably classify defendant's ejaculation on CC's leg as his completion of the sentencing offense. Regarding defendant's ejaculation, CC testified, "When he pulled himself out to be done it got down my—went down my leg and on me." This testimony indicated that there was no temporal division between the ejaculation and the penetration from which we can conclude that the ejaculation was a separate criminal act, rather than the result of the criminal penetration. Moreover, the record is insufficient to conclude that defendant committed the crime of indecent exposure because there is no evidence that defendant intended to or actually exposed himself to CC.[13] Rather, defendant assaulted CC from behind and CC told police that she did not observe defendant's penis. See *People v Neal*, 266 Mich App 654, 662-664; 702 NW2d 696 (2005) (concluding that "indecent exposure" cannot occur in a private home unless there is a witness to the display). Therefore, the trial court could not score this act under OV 12.

Finally, with regard to the fifth act, we are unable to separate defendant's holding of CC's wrist from the sentencing offense. Rather, the record shows that defendant held CC's wrist behind her back while he penetrated her. This was not a separate criminal act; rather it was the "force" element of CSC-I. MCL 750.520b. Accordingly, the trial court could not score this act under OV 12.

Consequently, the record supports defendant's commission of two contemporaneous felonious criminal acts. Therefore, although we conclude that the trial court erred in portions of its OV-12 analysis, we affirm its score of 10 points for that variable. MCL 777.42(1)(b). As noted previously, the trial court erred, however, by scoring OV 13 at 25 points. As calculated by the trial court, defendant's total OV score of 60 corresponded to a recommended-sentence range

---

[13] A non-frivolous argument could be made that defendant engaged in "open exposure" as opposed to "indecent exposure"—the distinction being that a defendant may commit "open exposure" in a private home under circumstances that create a reasonable risk of someone observing the exposure and being offended by it. *Neal*, 266 Mich App at 663. Nonetheless, to the extent that the prosecution may argue "open exposure" on appeal when it argued "indecent exposure" below, we rest on our conclusion that defendant's ejaculation constituted the completion of the criminal penetration rather than a separate offense.

of 51 to 85 months of imprisonment. MCL 777.62. Subtracting the 25 points for OV 13, defendant's OV total drops to 45, resulting in a recommended-sentence range of 27 to 45 months. MCL 777.62. Because the scoring error altered defendant's sentencing-guidelines range, he is entitled to resentencing. *People v Rhodes*, 305 Mich App 85, 91; 849 NW2d 417 (2014).[14]

## III. CONCLUSION

We affirm defendant's convictions, but remand this case to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood

---

[14] We note that, although we have concluded that certain of defendant's acts could not be *scored* under the guidelines, on remand, the trial court is not precluded from *considering* those acts when fashioning its sentence. Our indeterminate sentencing regime is designed to ensure that the punishment is proportionate to the seriousness of the circumstances surrounding the offense and the offender. *People v Milbourn*, 435 Mich 630, 651; 461 NW2d 1 (1990).