*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

AARON JAMES MILLER,

        Defendant-Appellant.

UNPUBLISHED
September 5, 2019

No. 340175
Gratiot Circuit Court
LC No. 2017-007600-FH

Before: BECKERING, P.J., and SAWYER and CAMERON, JJ.

PER CURIAM.

Defendant, Aaron James Miller, appealed by right his conviction after a jury trial of aggravated indecent exposure, MCL 750.335a(2)(b). The jury also found him to be a sexually deviant person, MCL 750.335a(2)(c), and the trial court sentenced him to a prison sentence of 1 day to life. Following a remand by this Court to consider defendant's ineffective assistance of counsel claims,[1] the circuit court denied defendant's request for a new trial on the aggravated indecent exposure conviction, dismissed defendant's sexually deviant person conviction, and ordered resentencing. We affirm.

## I. RELEVANT FACTS AND PROCEDURE

The charges against defendant arose after he sent to the victim, Rachel Adams, a video of himself masturbating. Defendant and Adams had known each other since grade school, fell out of contact after eighth grade, but reconnected on October 1, 2015, when defendant sent her a private message on Facebook asking if she is the cousin of a friend of his, Kenzie Stewart. Adams responded the next day that she was.

---

[1] *People v Miller*, unpublished order of the Court of Appeals, entered May 25, 2018 (Docket No. 340175).

Defendant and Adams exchanged a number of messages on October 2, mostly concerning defendant's daughter with Vanessa Bass, with whom Adams was friends, defendant's custody battle with Bass, and the age of Adams's boyfriend. At one point, defendant and Adams were messaging about Kenzie's breakup with her boyfriend, when defendant said to Adams that Kenzie was welcome to move in with him at any time, and "you can too, your family has good genes."[2] Adams testified that she asked what defendant meant, and he responded, "You are sexy." Adams responded, "Thank you." Defendant stated, "I would like to thank you in person." Adams did not respond, and defendant sent her a question mark. Defendant later messaged Adams to ask whether he was "barking up the wrong tree." Adams asked what he meant, and defendant replied, "I like you" and "You know what I mean . . . ." (Ellipsis in the original). To this, Adams responded, "Oh yeah I'm in an amazing relationship so there isn't a chance at it. Sorry." Defendant responded that he was available any time Adams wanted and that "it'd be just between you and me" and "It'd also piss off Vanessa."

On October 3, defendant sent Adams several pictures of his daughter. To Adams's observation that the child was getting big, defendant responded, "You're getting hot." The next day, October 4, Adams replied, "I appreciate the nice compliments but I have a man already." Defendant responded that he was "just saying" and "just call me if you are single." Adams messaged defendant, "Just drop it please" and "I'm in a great relationship." Adams testified that she wanted defendant to stop and leave her alone, which she indicated by telling him to drop it. Defendant responded, "Yes ma'am." Adams did not reply.

On October 12, defendant started a conversation about a mutual acquaintance that defendant said was "a huge bitch and lied about a bunch of stuff." After further exchanges, defendant said that, despite the person's treatment of him, he would "f**k the everliving sh*t out of her." Adams replied, "What?" and defendant explained, "She's gorgeous, even though she's a bitch." Adams told defendant, "OK you don't need to be telling me this." Defendant continued, "I'd do the same to you," and Adams responded, "I don't need to know this." Defendant asked why and, on the following day, Adams replied, "Because you don't come out and say those things to people in a relationship lol.[3]" Defendant told Adams that he did not care about her relationship. Adams did not reply.

On October 14, defendant stated that he liked Adams and that no one had to know they talk, and he invited Adams to come over, saying, "You will not regret it." Adams replied, "No can't." Defendant asked why, and Adams stated that she has a daughter and a boyfriend. Defendant asked, "Would you if you didn't," and Adams responded, "Idk[4] don't really think

[2] Unless otherwise indicated, quotations are from the Facebook messages exchanged between defendant and Adams. Adams read the messages during her trial testimony, and the prosecutor admitted them as trial exhibits.

[3] Adams testified that "lol" meant "laugh out loud," and that she used the acronym in everything and that it was "kind of like a period and a spacer."

[4] Adams testified that "Idk" means "I don't know."

-2-

that way." At this point, defendant sent Adams a video of him masturbating, followed by the messages, "I was thinking of you[,]" "And you definitely want to see me." Adams testified that she did not welcome the video from defendant, her feeling at the time was one of disgust, and she found the video disturbing and the exchange offensive.

When Adams did not respond to the video, defendant sent her a string of messages seeking a reaction: "?"; "Hey"; "Any response?"; "Anything?"; "Anything???" Adams finally responded, "No why did you send me that??? That is so disrespectful!!!" Defendant replied that it was not disrespectful, and that he wanted her. Adams replied, "Aaron stop." Defendant and Adams then exchanged messages arguing about whether Adams was attracted to defendant and whether she had lied about not being attracted to him. On October 17, defendant messaged Adams that he was "sorry about the other night." Adams did not reply. On October 19, defendant sent Adams "[o]kay" and Adams responded, "Yup." Defendant stated, "I'm glad you saw it though. It'd really piss Vanessa off." Adams responded "[s]aw what" and defendant said "[t]he video." Adams testified that she eventually shared the messages with Vanessa because she knew Vanessa had an attorney, and she thought the attorney "would do something and contact [her]."

Richard Ramereiz, Chief of Police for the Saint Louis, Michigan, Police Department, testified that he first interviewed Adams after his department received a complaint in November 2016. It is unclear from the record who filed the complaint. Following Chief Ramereiz's investigation, a warrant was issued for defendant's arrest, and in January 2017, the prosecution charged defendant in an amended felony information with one count of aggravated indecent exposure by a sexually deviant person. In the first part of a two-part trial, a jury found defendant guilty of aggravated indecent exposure. After subsequent relevant testimony in the second part of the trial, the same jury found defendant to be a sexually deviant person. Believing that it was statutorily required to do so by this Court's decision in *People v Campbell*, 316 Mich App 279; 894 NW2d 72 (2016), the trial court sentenced defendant to a prison term of one day to life.

Defendant filed a timely claim of appeal by right in this Court, followed several months later by a motion to remand to the trial court for an evidentiary hearing to develop a factual record regarding several claims of ineffective assistance of counsel. Specifically, defendant contended that his trial counsel rendered ineffective assistance by (1) failing to argue the sexually deviant person statute was unconstitutionally vague, (2) failing to obtain an expert witness for defendant's sexually deviant person charge, (3) failing to object to the admission of the post-offense messages between defendant and Adams, and (4) failing to advocate for an alternative sentence. Following our grant of defendant's motion for remand, defendant moved in the circuit court for a new trial on the same bases.

On remand, the parties agreed at the outset of the evidentiary hearing that defendant was entitled to resentencing pursuant to *People v Arnold*, 502 Mich 438; 918 NW2d 164 (2018). In *Arnold*, the Michigan Supreme Court overruled *Campbell* and held that the "1 day to life" sentence provided for in MCL 750.335a(2)(c) and MCL 767.61a for a defendant found to have been a sexually delinquent person at the time of the underlying offense is not to be construed as mandatory, but rather, is an alternative sentencing option to consider alongside the other available statutory penalties. The trial court then heard testimony from Dr. Jeffrey Wendt, a forensic and clinical psychologist. Subsequent to a psychological evaluation of defendant to

"address whether the sexually deviant person statute was applicable to his psychological presentation," Dr. Wendt concluded that defendant's sexual behavior was not "characterized by compulsive or repetitive behavior and that he did not have a diagnosis of any sexual deviancy or paraphilia." The trial court also heard from defendant's trial counsel, who testified he did not argue that the sexually deviant statute was unconstitutional because he thought the position unsupported by the law and that he had overlooked the fact that the statute entitled defendant to an expert witness. Defense counsel further testified that he had not considered objecting to admission of the post-offense messages, but responded affirmatively when asked if he found their admission helpful to show that Adams continued talking with defendant for more than a month after the incident. He agreed that he believed that if Adams had truly been offended, she would not have continued communicating with defendant.

In lieu of oral arguments by the attorneys at the end of the evidentiary hearing, the trial court ordered supplemental briefing by the parties. In its supplemental brief, the prosecution conceded that defendant was entitled to have an expert witness testify during the sexually deviant person phase of his trial, and that the failure of defendant's trial counsel to procure expert testimony was objectively deficient and prejudicial. The trial court agreed, and it dismissed the conviction of being a sexually delinquent person. The trial court found that defense counsel's representation at the aggravated indecent exposure portion of the trial, however, was not constitutionally deficient. The court reasoned that counsel's failure to challenge admission of the post-offense text messages was a matter of trial strategy and that there was no reasonable probability of a different outcome had defense counsel objected to their admission. The court stated that it would have overruled any objections to admission of the evidence, that the evidence was helpful to defendant because it supported counsel's argument that Adams was not truly offended, and because the evidence of defendant's guilt without the post-offense messages was overwhelming.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first contends that the evidence presented at trial was insufficient to convict him of aggravated indecent exposure. We disagree. We review de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). "We view the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact have found the essential elements of the crime to have been proved beyond a reasonable doubt." *Id*.

A jury convicted defendant of aggravated indecent exposure in violation MCL 750.335a(2)(b), which provides:

(1) A person shall not knowingly make any open or indecent exposure of his or her person or of the person of another.

(2) A person who violates subsection (1) is guilty of a crime, as follows:

* * *

(b) If the person was fondling his or her genitals, pubic area, buttocks, or, if the person is female, breasts, while violating subsection (1), the person is guilty of a misdemeanor punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both.

An open exposure is " 'any conduct consisting of a display of any part of the human anatomy under circumstances which create a substantial risk that someone might be offended.' " *People v Vronko*, 228 Mich App 649, 656; 579 NW2d 138 (1998), quoting *In re Certified Question*, 420 Mich 51, 63; 359 NW2d 513 (1984) (BOYLE, J. concurring). An indecent exposure is an intentional exposure of a part of a person's body "in a place where such exposure is likely to be an offense against the generally accepted standards of decency in a community." *Vronko*, 228 Mich App at 654 (quotation marks and citation omitted). "[T]he use of the word 'or' reveals that the plain language of the statute provides that one may be guilty of open exposure or indecent exposure, as it prohibits two different types of conduct." *People v Neal*, 266 Mich App 654, 656; 702 NW2d 696 (2005).

Viewing the evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found the essential elements of the crime of aggravated indecent exposure, MCL 750.335a(2)(b), to have been proved beyond a reasonable doubt. *Meissner*, 294 Mich App at 452. Defendant does not dispute that he sent Adams a video in which he knowingly exposed and fondled his genitals. He argues, however, that his exposure was not open or indecent because it was not reasonable for him to anticipate that Adams would be offended since he sent her the video during the course of a private, flirtatious online conversation. We find defendant's arguments unpersuasive.

That defendant's exposure took place during a private conversation has no bearing on whether his exposure violated MCL 750.335a. "The statute makes no reference to place, either public or private." *People v Kratz*, 230 Mich 334, 339; 203 NW 114 (1925). A different statute, MCL 750.167(1)(f), precludes engaging in indecent or obscene conduct in a public place. Accordingly, that the messages were private between defendant and Adams is not determinative.

Further, the record evidence supports the jury's finding that the circumstances under which defendant sent Adams the masturbation video created a substantial risk that Adams "might be offended." See MCL 750.335a(2)(b); *Vronko*, 228 Mich App at 656. The jury heard evidence that defendant indicated to Adams that he thought she was sexy almost immediately after they began to exchange messages. Adams thanked defendant for his compliment, but told him plainly that she was not interested and that she was in "an amazing" relationship with another man. She insisted that she did not need to know about defendant's sexual attraction to a mutual friend or to her, and when defendant persisted by inviting her to call him if she were single, she told him, "Just drop it please." Despite Adams's clear lack of interest in a sexual relationship with defendant, and her plea that he "drop it," defendant sent Adams a video of him masturbating.

Defendant urges us to interpret defendant's exchange with Adams as mutually flirtatious, to see Adams as "seemingly intrigued" and her responses as sending defendant "mixed signals."[5] In other words, defendant would have us view the evidence in the light most favorable to him, and make credibility determinations in his favor. However, in a challenge to the sufficiency of the evidence supporting a defendant's conviction, we review the evidence in a light most favorable to the prosecution, not the defendant. See *Meissner*, 294 Mich App at 452. In addition, we will not interfere with a jury's credibility determinations. *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008). The jury's verdict suggests that it found credible Adams's testimony that she did not welcome defendant's sexual advances, found most of their conversation disturbing, and continued to communicate with him merely out of politeness. In light of Adams's testimony and the jury's credibility determination, we decline to accept defendant's characterization of the interaction with Adams as being "between two consenting adults who were involved in a flirtatious and lust-driven conversation."[6]

Given the evidence presented at trial, a rational trier of fact could have found that the prosecution proved beyond a reasonable doubt that defendant knowingly exposed and fondled his genitalia under circumstances that created a substantial risk that Adams would be offended. See MCL 750.335a(2)(b); *Vronko*, 228 Mich App at 656. Because the evidence was sufficient to support the jury's conviction of defendant based on defendant's open exposure, it is unnecessary to address whether defendant also violated MCL 750.335a(2)(b) by committing an "indecent" exposure. *Neal*, 266 Mich App at 656.

## III. STATUTE VOID FOR VAGUENESS

Defendant next argues that the aggravated indecent exposure statute is void for vagueness because it lacks objective standards and it fails to give a reasonable person notice of what conduct is prohibited. Again, we disagree. We review de novo issues of constitutional law. *People v Tucker*, 312 Mich App 645, 651; 879 NW2d 906 (2015).

We "must assume that a statute is constitutional and construe that statute as constitutional unless it is clearly unconstitutional." *People v Douglas*, 295 Mich App 129, 135; 813 NW2d 337 (2011). The burden to prove a statute's invalidity is on the party challenging the statute. See *id*., Defendant may establish that the indecent exposure statute is unconstitutionally vague if (1) it does not provide fair notice of the prohibited conduct, (2) it encourages arbitrary or

---

[5] Throughout his briefs to this Court, defendant represents that he and Adams were involved in a mutually flirtatious, "lust-fueled" conversation. The record evidence does not support defendant's position.

[6] Defendant also implies that prosecutor should not hold him accountable for the fact that Adams saw the video because she voluntarily pushed the video's "play" arrow. What appeared in the message to Adams was the first frame of the video, to wit, a still image of a hand holding a penis. Even if Adams had not hit the "play" arrow in the middle of the first frame, the offense of aggravated indecent exposure arguably would have been complete.

discriminatory enforcement, or (3) its coverage is overbroad and impinges on First Amendment freedoms, *People v Boomer*, 250 Mich App 534, 539; 655 NW2d 255 (2002).

Defendant first argues that the indecent exposure statute does not give fair notice to persons pursuing sexual relationships online as to what conduct the statute prohibits. A statute provides fair notice when it "give[s] a person of ordinary intelligence a reasonable opportunity to know what is prohibited . . . ." *People v Roberts*, 292 Mich App 492, 497; 808 NW2d 290 (2011). To provide fair notice of proscribed conduct, a statute cannot use terms that require persons of ordinary intelligence to speculate regarding its meaning and differ about its application. *Id*. Fair notice exists when the statute's meaning can be determined by referencing "judicial interpretations, the common law, dictionaries, treatises, or the commonly accepted meanings of words." *People v Beam*, 244 Mich App 103, 105; 624 NW2d 764 (2000) (quotation marks and citation omitted). Judicial interpretations hold that the statute at issue applies to televised images, see *People v Huffman*, 266 Mich App 354, 361; 702 NW2d 621 (2005), and private places, see *Kratz*, 230 Mich at 339. Nothing in the plain language of the statute prevents its application to images electronically conveyed. See *Huffman*, 266 Mich App at 361 (declining to read into the statute a limitation that would prevent its application to a televised image). Accordingly, by referencing judicial opinions, persons of ordinary intelligence have a reasonable opportunity to know that electronically messaging other people private images of them fondling their genitalia may constitute open or indecent exposure. Thus, the statute provided defendant fair notice that his conduct was prohibited.

In addition to fair notice, a criminal statute is required to provide standards for its enforcement and administration to guard against arbitrary and discriminatory enforcement. *People v Lawhorn*, 320 Mich App 194, 203; 907 NW2d 832 (2017). "Scienter requirements alleviate vagueness concerns." *Gonzales v Carhart*, 550 US 124, 149; 127 S Ct 1610; 167 L Ed 2d 480 (2007); *Lawhorn*, 320 Mich App at 203. The requirement that a person knowingly engage in conduct is a scienter requirement. *Lawhorn*, 320 Mich App at 203. Defendant does not dispute that he knowingly exposed and fondled his genitalia when he videotaped himself masturbating and sent it to Adams. Rather, he implies that because he was merely trying to entice her to have sex with him, he could not know that his conduct violated the statute. Defendant's personal motive for engaging in the offending conduct is not relevant; what is relevant is whether defendant knowingly made an open or indecent exposure, and as noted above, he did. Accordingly, defendant has failed to meet his burden to prove that MCL 750.335a is invalid. *Douglas*, 295 Mich App at 135.

Finally, defendant argues that MCL 750.335a impinges on First Amendment freedoms because the act of "[s]ending sexually explicit messages to a willing adult recipient is constitutionally protected." Even so, Defendant cites no authority extending First Amendment protections to a sexually explicit message sent to an unwilling adult recipient who finds the message offensive.

In light of the foregoing, we conclude that defendant has not met his burden to prove that MCL 750.335a is void for vagueness. *Id*.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant further argues that his trial counsel rendered constitutionally ineffective assistance by failing to object to the admission of instant messages exchanged between defendant and Adams after the charged offense had occurred. He contends that trial counsel's deficient performance prejudiced him because the messages made him appear disrespectful, pushy, and unhinged, and made it more likely that the jury convicted him because he was a bad person. Once again, we disagree. A defendant's ineffective assistance of counsel claim "is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). We review for clear error the trial court's findings of fact, and we review de novo questions of law. *Id*. A finding is clearly erroneous if, after reviewing the entire record, we are definitely and firmly convinced that the trial court made a mistake. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012).

"Effective assistance of counsel is presumed, and a defendant bears a heavy burden to prove otherwise." *People v Swain*, 288 Mich App 609, 643; 794 NW2d 92 (2010). To prevail on a claim of ineffective assistance of counsel, a defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and, (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. See *Smith v Spisak*, 558 US 139, 149; 130 S Ct 676; 175 L Ed 2d 595 (2010); *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). A defendant must overcome the strong presumption that defense counsel's performance constituted sound trial strategy. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). Defense counsel is afforded wide discretion in matters of trial strategy because counsel may be required to take calculated risks to win a case. *People v Pickens*, 446 Mich 298, 325; 521 NW2d 797 (1994). Nevertheless, "a court cannot insulate the review of counsel's performance by calling it trial strategy." *Trakhtenberg*, 493 Mich at 52. Counsel has the duty to make reasonable investigations and to exercise professional judgment. *Id*. at 52-53.

The record evidence in the case at bar supports the trial court's finding that not challenging the post-offense messages was a matter of trial strategy. At the hearing on defendant's ineffective-assistance motion, defense counsel testified that he did not believe that he considered moving to exclude the messages. Taken alone, this might indicate that counsel did not exercise reasonable professional judgment. However, counsel responded affirmatively when asked if he found it helpful that Adams continued to speak with defendant for over a month after the incident, and agreed that he believed that if a person were offended, she or he would not have continued communicating.

Allowing the post-offense messages to come into evidence arguably was a reasonable trial strategy calculated to undermine testimony that would establish one of the elements of the charged offense. See *Pickens*, 446 Mich at 325. During opening statements, trial counsel argued that "[t]he key, I believe, for determining whether or not this was criminally indecent to her is going to be [Adams's] reaction." He further argued that Adams was not angry, did not delete the video, and did not block defendant from communicating with her. Counsel noted that the worst word Adams used for the video was "disrespectful." Defense counsel also observed that in "the communication right after the video was received," defendant said that he was glad Adams saw it, and Adams responded, "saw what," as if she did not remember viewing it, and argued that

Adams's responses were not consistent with her finding the communication offensive. Defense counsel reiterated:

> I'm sure [Adams is] going to come into court and tell you it was horrible, offensive but the key is in real time, that's how she responded. Doesn't delete it, doesn't block it, continues the communication and in fact, after the video she even invites him to keep talking . . . .

During closing arguments, defense counsel again argued that Adams's reaction in real time was the key to understanding whether Adams was offended. Defense counsel argued that it was impossible for defendant to know that the video would be offensive when Adams told him "lol" when defendant said that he wanted to have sex wither. Defense counsel also argued that Adams only called the communication "disrespectful."

In light of defense counsel's opening statement and closing argument, we are not definitely and firmly convinced, *Reese*, 491 Mich at 139, that the trial court erred in finding that allowing admission of the text messages following the masturbation video was a matter of trial strategy. A jury might reasonably have inferred from the fact that Adams communicated with defendant after the video that Adams was surprised more than offended by the video. That the strategy did not work does not necessarily amount to ineffective assistance of counsel. *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008).

Even if defense counsel's failure to object to admission of the post-offense exchanges constituted deficient performance, defendant cannot show that, "but for counsel's deficient performance, a different result would have been reasonably probable." *Trakhtenberg*, 493 Mich at 56 (quotation marks and citation omitted). In the present case, the trial court found that there was no reasonable probability that the result of defendant's trial would have been different had trial counsel challenged admission of the post-offense messages because it would have overruled the objection. Counsel is not ineffective for failing to make futile challenges. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). In addition, as already indicated, the pre-offense evidence was sufficient to establish the elements of aggravated indecent exposure beyond a reasonable doubt. Thus, defendant has not shown that, but for defense counsel's failure to object to admission of the post-offense exchanges between defendant and Adams, "a different result would have been reasonably probable." *Trakhtenberg*, 493 Mich at 56. Therefore, defendant's claim of ineffective assistance of counsel must fail. See *id*. at 51.

## V. REMAINING ISSUES

Defendant also contends that the sexually deviant person statute is void for vagueness and that he received ineffective assistance of counsel on his sexually deviant person charge. The trial court's opinion and order dismissing defendant's conviction for being a sexually deviant person and indicating that defendant was entitled to resentencing on the aggravated indecent

exposure charge renders these issues moot.[7] An issue is moot if it presents nothing more than an abstract legal question that does not rest on existing facts, or there is no actual controversy. *People v Richmond*, 486 Mich 29, 34; 782 NW2d 187 (2010), amended 486 Mich 1041 (2010). Because the prosecution stipulated to dismissal of the sexually deviant person charge and conceded on appeal that defendant's trial counsel rendered ineffective assistance on defendant's sexually deviant person charge, there remains no actual controversy.

Defendant raises two additional ineffective assistance of counsel arguments in a standard 4 brief.[8] He contends that his defense counsel rendered ineffective assistance by failing to object when the prosecutor told the jury that the video was "live" and by failing to request a jury instruction allowing jurors to consider other factors regarding defendant's aggravated indecent exposure conviction. In order to preserve ineffective assistance issues for appellate review, a defendant must move in the trial court for a new trial or an evidentiary hearing. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). Although defendant moved for a new trial, he did not do so based on either of these two issues. Therefore, these issues are unpreserved and our review is limited to mistakes that are apparent on the record alone. *Heft*, 299 Mich App at 80.

The record does not support defendant's argument that defense counsel was ineffective for failing to object to the prosecution's use of the word "live" to characterize the masturbation video. Defendants are responsible for "furnishing the reviewing court with a record to verify the factual basis of any argument upon which reversal was predicated." *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000). The present defendant does not provide a record citation in his brief to any instance in which the prosecution stated that the video was live, and the prosecution did not argue in opening or closing statements that the video was live. Because defendant provides no factual basis for his position, he is not entitled to relief on this ground. See *id*. (indicating that it is error to reverse a defendant's conviction when the defendant has not provided a factual basis to support his or her argument).

Finally, whether to request a particular jury instruction is a matter of trial strategy. *People v Matuszak*, 263 Mich App 42, 59-60; 687 NW2d 342 (2004). When considering an unpreserved claim of ineffective assistance of counsel, we must consider the possible reasons for counsel's actions. *Vaughn*, 491 Mich at 670. The Model Criminal Jury Instructions provide the following instructions regarding indecent exposure:

> (1) The defendant is charged with the crime of indecent exposure. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:

---

[7] The trial court set the resentencing date for March 18, 2019, "absent a contrary order from the Court of Appeals."

[8] A "Standard 4" brief refers to the brief a defendant may file *in propria persona* pursuant to Standard 4 of Michigan Supreme Court Administrative Order No. 2004-6, 471 Mich c, cii (2004).

(2) First, that the defendant exposed (his / her) (state part of body).

(3) Second, that the defendant knew that (he / she) was exposing (his / her) (state part of body).

(Use the following paragraph only if a violation of MCL 750.335a(2)(b) is charged.)

(4) Third, that the defendant was fondling (his / her) (genitals / pubic area / buttocks / breasts*).

(5) (Third / Fourth), that the defendant did this in a place under circumstances in which another person might reasonably have been expected to observe it and which created a substantial risk that someone might be offended or in a place where such exposure is likely to be an offense against your community's generally accepted standards of decency and morality. In determining this, you must think about the nature of the act and all of the circumstances surrounding the act. *(State any other relevant factors, e.g., the age and experience of the persons who observed the act, the purpose of the act, etc.)* [M Crim JI 20.33 (emphasis added).]

It is not apparent from the record that defense counsel's decision not to request the consideration of additional jury instructions as part of the aggravated indecent exposure instructions was an unsound trial strategy. Defendant argues that defense counsel should have requested that other factors be stated in the jury instructions, including that the video was not live, that the video was sent to entice Adams to meet up, and that Facebook controlled the terms of online activity. However, defense counsel specifically chose to deemphasize the community standard element in closing arguments, arguing instead that Adams's reaction was what was relevant. Counsel may have reasonably believed that adding additional wording to the community standard portion of the jury instruction would serve to focus the jury's attention on an element he wished to deemphasize.

Additionally, a defendant is entitled to instructions only on theories or defenses that the evidence supports. *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). Counsel may have reasonably decided not to request that the instruction refer to Facebook's terms of use because these terms were not part of the evidence at trial and it was therefore unlikely that the trial court would have granted the requested instruction.

The defendant must also show that "but for counsel's deficient performance, a different result would have been reasonably probable." *Trakhtenberg*, 493 Mich at 56 (quotation marks and citation omitted). Because there was no evidence that the prosecution argued that the video was live, and defense counsel extensively argued that defendant's video was sent to entice Adams sexually and specifically as a strategy to "hook up," these issues were adequately presented to the jury and it is not reasonably likely that further instruction would have led to a different result. And because Facebook's terms of use were not part of the evidence at trial, it was unlikely that the trial court would have granted the requested instruction, again rendering it

not reasonably likely that had counsel requested such an instruction there would have been a different result.

Based on the foregoing, we conclude that defendant is not entitled to relief because he has demonstrated neither unreasonable trial strategy nor prejudice in defense counsel's decisions regarding the aggravated indecent exposure jury instruction.

Affirmed.

/s/ Jane M. Beckering
/s/ David H. Sawyer
/s/ Thomas C. Cameron